**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MICHELE OWEN BLACK, | : | |
| Plaintiff. | : | CIVIL ACTION |
| | : | No. 14-6702 |
| v. | : | |
| MONTGOMERY COUNTY, et al., | : | |
| Defendants. | : | |

**September 21_, 2015** **Anita B. Brody, J.**

**MEMORANDUM**

Plaintiff Michele Owen Black brings suit under 42 U.S.C. § 1983 against Defendants Montgomery County, Detective John T. Fallon, Lower Merion Township, Detective Gregory Henry, Detective Bryan Garner, Chief Fire Officer Charles McGarvey, Deputy Fire Marshall Frank Hand, and State Trooper Robert Pomponio. Black alleges that the individual Defendants, in their individual capacities, deprived her and/or conspired to deprive her of procedural due process under the Fourteenth Amendment, and maliciously prosecuted and/or conspired to maliciously prosecute her in violation of the Fourth Amendment. Black also brings *Monell* claims against Defendants Montgomery County and Lower Merion Township. Additionally, Black brings state law claims of malicious prosecution, false imprisonment, and intentional infliction of emotional distress against the individual Defendants. I exercise federal question jurisdiction over Black's § 1983 claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over Black's state law claims pursuant to 28 U.S.C. § 1367.

The following motions are currently before me: the motion to dismiss of Defendants Lower Merion Township, Henry, Garner, McGarvey, and Hand (collectively, "Township Defendants"); the motion to dismiss of Defendants Montgomery County and Fallon (collectively,

"County Defendants"); and the motion to dismiss of Pomponio. For the reasons set forth below, I will grant Defendants' motions to dismiss.

## I. BACKGROUND[1]

On November 21, 2012, a fire occurred in the home where Plaintiff Michele Owen Black had grown up in Lower Merion Township, Montgomery County, Pennsylvania. Only two days before the fire, Black's mother, Paula Owen, had sold the home. Although the settlement date was originally set for November 30, 2012, Owen moved the date forward to November 19, 2012 to enable the buyers to replace the old knob and tube wiring. The buyers wanted to remove the wiring because it was a fire hazard that prevented them from obtaining home owner's insurance. Because Owen moved up the settlement date, she entered into a post settlement possession addendum that allowed her to remove her possessions while the buyers' electricians upgraded the wiring. Black flew in from California to help Owen move her belongings out of the house.

On the day of the fire, Black was in the home removing her mother's possessions while electricians were upgrading the wiring. A fire broke out on the third floor middle bedroom. Prior to calling for help, the electricians extinguished the fire. The Gladwyne Fire Chief called the dispatcher and reported that the incident was an electrical fire.

Defendant Deputy Fire Marshall Frank Hand and his supervisor, Defendant Chief Fire Officer Charles McGarvey, were on the scene. Hand was not an electrical expert. He did a quick look around the house, then went to the room of the fire and disassembled the electrical outlet that had suffered fire damage. Hand did not preserve the outlet, supporting brackets, electrical box, or outlet cover. Hand concluded that the fire had been intentionally set and was not an electrical fire. In reaching his conclusion, Hand intentionally misrepresented that the wire

[1] All facts are taken from the Complaint and construed in the light most favorable to Black. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

to the outlet had been cut 18 inches from the outlet and there was no electricity to the outlet. McGarvey also witnessed the scene and assisted Hand with the investigation.

Defendant John T. Fallon is a certified fire investigator. He arrived at the scene, examined the room and outlet, and concluded that the outlet was not energized at the time of the fire; therefore, the fire was intentionally set. In reaching his conclusion that the outlet was not functional, he took the word of the electricians rather than following his own protocol and going to the basement to inspect the panel box and the electrical service.

Defendant State Trooper Thomas Pomponio, an alternate deputy fire marshal, also was called to the scene. He did a quick investigation, and then heard from someone else that the wire to the electrical box had been previously cut. After learning this, he ruled out that the fire was caused by the electrical outlet, and concluded that it was caused by an open flame. Although he typically would go into the basement to inspect the electrical panel, he did not do so because he heard that someone else had already inspected the panel.

A box of matches was found on a windowsill in the room where the fire originated. Despite evidence that this was an electrical fire caused by arc tracking across a carbonized path, Fallon, Pomponio, and Hand assumed that these matches were used to intentionally start the fire. Fallon, Pomponio, Hand, and McGarvey engaged in a negative corpus methodology in investigating the fire whereby they used the process of elimination to conclude that the only possible source of the fire was an open flame. The negative corpus methodology has been repudiated by the National Fire Protection Association.

On the day of the fire, Fallon, Pomponio, Hand, as well as Detectives Gregory Henry and Bryan Garner, interviewed the electricians and Black. They accepted the electricians' story at face value that the electricians had nothing to do with the fire, and immediately accused Black of

setting the fire.

Defendant Fallon swore out an affidavit of probable cause to arrest Black that contained many material falsehoods and omissions. Some of the material omissions included failing to mention that: the fire started at the outlet; the Gladwyne fire chief had concluded that it was an electrical fire; the electricians were there to fix the knob and tube wiring; and that the outlet was never tested to determine whether it was connected to live wires.

After the fire, Black returned to her home in California. On December 17, 2012, an arrest warrant was issued for Black for charges of arson endangering persons, risking catastrophe, criminal mischief, and recklessly endangering another person. Black flew back to Philadelphia for her arraignment. On December 18, 2012, Black was arraigned and immediately released on $50,000 unsecured bail. She was then required to appear at the police station for fingerprinting and photographing, which took over an hour.

After her arraignment, Black returned to her home in California. On January 24, 2013, Black flew in from California to attend her preliminary hearing. Additionally, Black flew from California to Pennsylvania for twelve out of fourteen scheduled pre-trial conferences, hearings, and trial listings because the Court Notice for each indicated that if she did not appear, a bench warrant would issue for her arrest and she would forfeit bail.

On April 23, 2014, Black's jury trial began. On April 24, 2014, Black's trial ended. The jury deliberated for less than forty minutes before it found Black not guilty of all charges.

## II. STANDARD OF REVIEW

In deciding a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled

to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted).

To survive dismissal, a complaint must allege facts sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. However, an exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered . . . ." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis omitted) (citations omitted) (internal quotation marks omitted). Thus, a court may "consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). Further, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

## III. DISCUSSION

### A. Section 1983 Claims

"To establish liability under 42 U.S.C. § 1983, a plaintiff must show that the defendants,

acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury." *Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005). Black brings § 1983 claims against Defendants on the grounds that she was maliciously prosecuted in violation of the Fourth Amendment and deprived of procedural due process in violation of the Fourteenth Amendment.

**1. Fourth Amendment Malicious Prosecution Claim**

Black alleges that Defendant Fallon maliciously prosecuted her in violation of the Fourth Amendment. To prove a Fourth Amendment malicious prosecution claim, a plaintiff must show that:

> (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in [the plaintiff's] favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007). County Defendants contend that Black cannot succeed on her malicious prosecution claim because she has not suffered a Fourth Amendment seizure. Although Black was never placed in custody following the initiation of prosecution, she argues that her liberty was sufficiently restricted to constitute a seizure.

A person need not be placed in custody to suffer a deprivation of liberty consistent with the concept of seizure. As long as "the state places constitutionally significant restrictions on a person's freedom of movement for the purpose of obtaining his presence at a judicial proceeding, that person has been seized within the meaning of the Fourth Amendment." *Schneyder v. Smith*, 653 F.3d 313, 321-22 (3d Cir. 2011) (footnote omitted).

In *Gallo v. City of Philadelphia*, 161 F.3d 217, 222 (3d Cir. 1998), the Third Circuit held that the plaintiff had been seized post-indictment because he was required to post a $10,000

bond, attend all court hearings, contact Pretrial Services on a weekly basis, and he was prohibited from traveling outside of Pennsylvania and New Jersey. Although it was a "close question" whether the plaintiff had been seized, the Third Circuit concluded that the totality of the restrictions constituted a seizure. *Id.* The Third Circuit placed particular emphasis on the plaintiff's mandatory court appearances and travel restrictions. *Id.* at 223-25.

Following *Gallo*, the Third Circuit in *DiBella v. Borough of Beachwood*, 407 F.3d 599 (3d Cir. 2005), addressed whether the plaintiffs, who had to attend multiple court hearings, had been seized as required to establish a malicious prosecution action. The *DiBella* court reiterated that whether the restrictions in *Gallo* had amounted to a seizure was a "close question." 407 F.3d at 603. The Third Circuit then held that the plaintiffs had not been seized because "they were never arrested; they never posted bail; they were free to travel; and they did not have to report to Pretrial Services." *DiBella*, 407 F.3d at 603. In reaching this conclusion, the Third Circuit stressed that only "[p]retrial custody and some *onerous* types of pretrial, non-custodial restrictions constitute a Fourth Amendment seizure." *Id.* (emphasis added).

Black was never arrested or placed in custody. At her arraignment, she was released on $50,000 unsecured bail[2] and then required to appear at the police station for photographing and fingerprinting.[3] Although Black had to appear at pre-trial conferences, hearings, and trial listings, she had no reporting requirements and was free to travel.[4] Similar to the plaintiffs in

---

[2] Release on Unsecured Bail Bond is "[r]elease conditioned upon the defendant's written agreement to be liable for a fixed sum of money if he or she fails to appear as required or fails to comply with the conditions of the bail bond. No money or other form of security is deposited." Pa. R. Crim. P. 524.

[3] Although *Gallo* and *DiBella* do not address photographing and fingerprinting, courts in this district have held that these are not onerous restrictions that amount to a seizure. *See Williams v. Stofflet*, No. 15-1642, 2015 WL 4130930, at *4 (E.D. Pa. July 9, 2015); *Collins v. Jones*, No. 13-7613, 2015 WL 790055, at *9 (E.D. Pa. Feb. 24, 2015); *Perkins v. Staskiewicz*, No. 08-1651, 2010 WL 2510191, at *4 (M.D. Pa. June 17, 2010).

[4] No court of appeals has "been willing to conclude that normal conditions of pretrial release constitute a 'continuing seizure' barring some significant, ongoing deprivation of liberty, such as a restriction on the

*DiBella*, Black was "never arrested; [she] never posted bail; [she] [was] free to travel; and [she] did not have to report to Pretrial Services." *DiBella*, 407 F.3d at 603. Unlike *Gallo*, where the plaintiff had to post bail, restrict his travel, and report weekly to Pretrial Services, Black did not experience "significant restrictions on [her] freedom of movement for the purpose of obtaining [her] presence at a judicial proceeding." *Schneyder*, 653 F.3d 321-22 (3d Cir. 2011). Rather, Black was free to move throughout the country without any reporting requirements. Her situation is much more akin to that of the plaintiffs in *DiBella* than the plaintiff in *Gallo*. While Black did not suffer the types of onerous non-custodial restrictions that constitute a Fourth Amendment seizure, the outcome might have been different if Black had either posted bail, experienced travel restrictions, reported regularly to Pretrial Services, or suffered some other significant restriction on her freedom of movement. I will grant the County Defendants' motion to dismiss Black's Fourth Amendment malicious prosecution claim against Fallon because Black was never seized.

**2. Fourteenth Amendment Procedural Due Process Claims**

Black alleges that Defendants Fallon and Hand deliberately fabricated evidence and suppressed and/or destroyed exculpatory evidence, thereby depriving her of procedural due process in violation of the Fourteenth Amendment. Township Defendants and County Defendants move to dismiss these claims. The only case that Black cites for the proposition that a stand-alone procedural due process claim exists under the Fourteenth Amendment for the fabrication of evidence is *Halsey v. Pfeiffer*, 750 F.3d 273 (3d Cir. 2014).

In *Halsey*, the Third Circuit declared:

---

defendant's right to travel interstate." *Kingsland v. City of Miami*, 382 F.3d 1220, 1236 (11th Cir. 2004) (collecting cases). Arguably, Black's required attendance at a dozen court proceedings may go beyond "normal conditions" of pretrial release. Without more, however, mandatory attendance at these proceedings is insufficient to constitute a seizure.

> [W]e hold that if a defendant has been *convicted* at a trial at which the prosecution has used fabricated evidence, the defendant has a stand-alone claim under section 1983 based on the Fourteenth Amendment if there is a reasonable likelihood that, without the use of that evidence, the defendant would not have been convicted. . . . In reaching our result, we hasten to add that courts in this Circuit should not permit a criminal defendant who later brings a civil action against state actors who had been involved in his prosecution to use this opinion beyond the scope of our holding.

750 F.3d at 294-95 (emphasis added). In line with the admonition that district courts should not go beyond the scope of the holding, the Third Circuit explained that a Fourteenth Amendment fabricated evidence claim "should not be permitted to survive a motion for summary judgment or for judgment as a matter of law unless [the plaintiff] can demonstrate that the record supports a conclusion that the allegedly fabricated evidence was so significant that it could have affected the outcome of the criminal case." *Id.* at 295. *Halsey* stands for the principle that a procedural due process claim exists if there is a reasonable likelihood that fabricated evidence led to an individual's conviction.

It is evident from *Halsey* that Black cannot succeed on her Fourteenth Amendment fabricated evidence claims because she was not convicted at trial. There is no need to wait until summary judgment to reach this conclusion—the fabricated evidence could not have affected the outcome of Black's criminal case because she was found not guilty. Therefore, I will grant the Township Defendants' and County Defendants' motions to dismiss Black's Fourteenth Amendment procedural due process claims against Fallon and Hand.

**3. Conspiracy Claims**

Black brings § 1983 conspiracy claims against Defendants Fallon, Hand, Pomponio, McGarvey, Garner, and Henry. Specifically, Black alleges that the individual Defendants conspired to maliciously prosecute her in violation of the Fourth Amendment and to deprive her of procedural due process in violation of the Fourteenth Amendment. Defendants move to

dismiss these claims.

To succeed on a § 1983 conspiracy claim, a plaintiff must prove an actual deprivation of a federal constitutional or statutory right. *Cook v. Randolph Cty., Ga.*, 573 F.3d 1143, 1152-54 (11th Cir. 2009); *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999); *Dixon v. City of Lawton, Okl.*, 898 F.2d 1443, 1449 (10th Cir. 1990); *Andree v. Ashland Cty.*, 818 F.2d 1306, 1311 (7th Cir. 1987); *Villanueva v. McInnis*, 723 F.2d 414, 418 (5th Cir. 1984); *Landrigan v. City of Warwick*, 628 F.2d 736, 742 (1st Cir. 1980); *see also Sweetman v. Borough of Norristown, PA*, 554 F. App'x 86, 90 (3d Cir. 2014) ("A § 1983 conspiracy claim is viable only if there has been an actual deprivation of a constitutional right."). As previously discussed, Black cannot succeed on her Fourth Amendment malicious prosecution claim or her Fourteenth Amendment procedural due process claims. I will grant Defendants' motions to dismiss Black's § 1983 conspiracy claims because she is unable to prove an actual deprivation of her Fourth or Fourteenth Amendment rights.

**4. *Monell* Claims**

Black brings *Monell* claims against Defendants Lower Merion Township and Montgomery County. Township Defendants and County Defendants move to dismiss these claims.

A municipality or other local government body may be held liable for a deprivation of a constitutional right caused by action taken pursuant to official policy or custom. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690-91 (1978). Additionally, "under certain circumstances," a local governing body may be liable under § 1983 for failure to train its employees. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 380 (1989). "However, for there to be municipal liability, there [] must be a violation of the plaintiff's constitutional rights." *Brown v.*

*Commonwealth of Pa., Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 482 (3d Cir. 2003); *see also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point.")

The only constitutional deprivations alleged in Black's Second Amended Complaint are the allegations that Black was maliciously prosecuted in violation of the Fourth Amendment and deprived of procedural due process in violation of the Fourteenth Amendment. Black claims that Lower Merion Township and Montgomery County are liable for causing their employees to commit these alleged Fourth and Fourteenth Amendment violations. As discussed above, Black has failed to sufficiently allege either a violation of her Fourth or Fourteenth Amendment rights. Black cannot succeed on her § 1983 claims because she has failed to allege a constitutional violation. Therefore, I will grant the Township Defendants' and County Defendants' motions to dismiss Black's *Monell* claims against Lower Merion Township and Montgomery County.

**B. State Law Claims**

Black brings state law claims for malicious prosecution, false arrest, and intentional infliction of emotional distress against Pomponio, Fallon, Hand, McGarvey, Garner, and Henry.

Under 28 U.S.C. § 1367(c)(3), a district court has discretion to decline to exercise supplemental jurisdiction over state law claims if it has dismissed all claims over which it had original jurisdiction. "[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788

(3d Cir. 1995).

As previously discussed, I will grant Defendants' motions to dismiss all federal claims. There is no affirmative justification based on judicial economy, convenience, or fairness for retaining jurisdiction over the state law claims against Fallon, Hand, McGarvey, Garner, and Henry. Therefore, I will decline to exercise supplemental jurisdiction over the state law claims against Fallon, Hand, McGarvey, Garner, and Henry and grant the Township Defendants' and County Defendants' motions to dismiss these claims without prejudice to Black to re-file them in state court.

Black concedes that the state law claims against Pomponio should be dismissed based on the doctrine of sovereign immunity. ECF No. 36 at 1. Due to considerations of judicial economy, convenience, and fairness, I will grant Pomponio's motion to dismiss Black's state law claims against him on the merits.

## IV. CONCLUSION

For the reasons set forth above, I will grant Defendants' motions to dismiss. Specifically, I will grant Defendants' motions to dismiss all federal claims on the merits. Additionally, I will grant Pomponio's motion to dismiss the state law claims against him on the merits. I will decline to exercise supplemental jurisdiction over the state law claims against Henry, Garner, McGarvey, Hand, and Fallon, and grant the Township Defendants' and County Defendants' motions to dismiss these claims without prejudice to Black to re-file them in state court.

s/Anita B. Brody

____________________________
ANITA B. BRODY, J.

Copies **VIA ECF** on _________ to: Copies **MAILED** on _______ to: